Receipt number AUSFCC-10908767

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| IMPERIUM EQUITY PARTNERS, LLC<br><br>      Plaintiff,<br>v.<br><br>UNITED STATES<br><br>      Defendant. | No. **25-2026 C**<br><br><br>(Judge_____) |

# COMPLAINT

IMPERIUM EQUITY PARTNERS, LLC ("Plaintiff" or "Lessor") hereby files this Complaint as a result of Defendant's refusal to abide by the terms of the pertinent Lease, United States General Services Administration Number GS-04P-LFL00292.

  I.  PARTIES AND JURISDICTION

1. Imperium Equity Partners, LLC is a limited liability company incorporated in the State of Delaware, with its principal place of business located at 2304 19th Street, Suite 301, Gulfport, Mississippi 39501.

2. Plaintiff is the current Lessor under Lease No. GS-04P-LFL00292 ("the Lease") for 43,538 rentable square feet ("RSF") located at 14100 NW 4th Street, Sunrise, Florida 33325 (the "Leased Premises" or "Building") housing the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

3. Defendant is the United States, at all times pertinent hereto, operated through the United States General Services Administration (hereinafter may be referred to as the "Government," or "GSA").

4. This Court has jurisdiction over this matter pursuant to the Contract Disputes Act of

1

1978, 41 U.S.C §§ 601, *et seq.* and the Tucker Act, 28 U.S.C. § 1491, *et seq*. in that Plaintiff's claims are founded upon an express contract with the United States.

## II.     FACTUAL BACKGROUND

### A.     The Lease

5. The Lease was executed on or about May 26, 2021 between Lessor and GSA for a fifteen (15) year term, ten (10) year of which are firm term, lease of the Leased Premises. (See Exhibit ("Ex.") 1 at 1).

6. Under the Lease, equitable adjustments are required of GSA when a Government change to Lessor's work results in increased costs. (See Ex. 1 at 118).

7. Section 4.01 of the Lease provides a schedule for the design and buildout of the Leased Premises, requiring the Government to issue a Notice to Proceed ("NTP") approximately 185 Working Days after Lease Award. (See Ex. 1 at 28).

8. Specifically, Lease Section 4.01 requires:

   a. The Government to prepare and provide to Lessor Design Intent Drawings ("DIDs") within forty-five (45) Working Days after Lease award (Section 4.01(A));

   b. The Lessor to prepare and provide to the Government 65% Construction Drawings ("CDs") conforming to the approved DIDs within thirty (30) Working Days (Section 4.01(D));

   c. The Lessor to prepare and provide to the Government 90% CDs within twenty (20) Working Days of the Government's approval of 65% CDs (Section 4.01(D));

   d. The Lessor to prepare and provide to the Government 100% CDs within ten (10) Working Days of the Government's approval of 90% CDs (Section 4.01(D));

2

    e.    The Government to approve 100% CDs within ten (10) Working Days (Section 4.01(E));

    f.    The Lessor to provide Lease-compliant Tenant Improvement Cost Summary ("TICS") and Building Specified Amortized Capital ("BSAC") price proposals within twenty (20) Working Days following the end of Government CD review period (Section 4.01(F); Section 4.01(G));

    g.    The Government to issue an NTP within twenty (20) Working Days after Lessor's submission of Lease-compliant TICS and BSAC price proposals (Section 4.01(H)).

    h.    That the Lessor complete all work required to prepare the Leased Premises ready for use no later than 180 Calendar days following issuance of NTP (Section 4.01(I)).

(See Ex. 1 at 28).

9. Based on the schedule under Section 4.01 of the Lease, the NTP should have been issued on or about October 27, 2021[1], and the buildout of the Leased Premises should have been completed for the Government's occupancy on or about April 25, 2022[2].

10. However, due to mounting Government delays, the ATF still has not taken occupancy of the Leased Premises as of date of the filing of this Complaint—over four and a half years after Lease award.

    **B.**    **Government Delays After Lease Execution**

11. Within days of the Lease execution on May 26, 2021, GSA provided Lessor a written

---

[1] https://www.timeanddate.com/date/weekdayadd.html?d1=26&m1=05&y1=2021&

[2] https://www.timeanddate.com/date/dateadded.html?m1=10&d1=27&y1=2021&type=add&ay=&am=&aw=&ad=180&rec=

Stop Work Order on June 16, 2021 directing the Lessor to "immediately suspend performance of the Subject Lease pending resolution of the protest" after a bid protest was filed at the Government Accountability Office ("GAO"), and later appealed to this Court, challenging the Lease award to Lessor. (Ex. 2).

12. In response to the protest, GSA offered to take corrective action, which resulted in a voluntary stay of performance that was not lifted by the Court until January 28, 2022[3], causing Lessor to incur considerable expenses in carrying and maintaining the Leased Premises pending GSA's period of corrective action. (See Ex. 3).

13. GSA's voluntary stay of performance resulted in a 247-day delay during which Lessor was prohibited from moving forward with the schedule for the design and buildout of the Leased Premises as outlined in Section 4.01 of the Lease.

14. During this prolonged period of delay and suspension of performance, the Lessor faced threats of default from its lender that carried the risk of personal financial ruin to its members due to their personal guarantees on the $14,418,233.68 loan used to purchase the property and construct the Leased Premises ("Loan 1"). (See Ex. 4).

15. Once GSA's voluntary stay was lifted on January 28, 2022, GSA was obligated to promptly resume compliance with the Lease's construction schedule and to issue the NTP on or about October 25, 2022.[4]

16. Instead, GSA stalled the design, construction, and other post-award activities by imposing significant design changes to the Lease requirements, which further caused substantial delays in the buildout schedule for the Leased Premises.

17. In particular, the Government made multiple drastic changes to Lessor's 90% CDs, which

---

[3] See *Dolphin Park TT, LLC v. United States*, No. 21-1693, ECF No. 39 (Fed. Cl. Oct. 19. 2022).
[4] https://www.timeanddate.com/date/weekdayadd.html?d1=28&m1=1&y1=2022&type=dd

were in effect changes to the DIDs that the Government itself was required to provide to Lessor under the Lease within 45 Working Days from Lease award. (See Ex. 1 at 28, Section 4.01(A)).

18. The Government's changes included major exterior design alterations, such as the addition of a mezzanine, an extended canopy, a K9 bathing unit, and an extension of the building's concrete slab, among other modifications that significantly delayed the Lessor and improperly extended its period of performance under the Lease.

19. As a result of these significant Government-directed changes, the construction documents submitted to the City of Sunrise for permitting were no longer considered valid, requiring the Lessor to restart the permitting process and causing an additional layer of substantial delay.

20. In addition, although the Lessor submitted Lease-compliant TI and BSAC pricing proposals, GSA caused further delay by directing the Lessor to reallocate TI and BSAC items as Shell costs in direct contravention of the Lease requirements.

21. Although GSA asserted that the Lessor failed to properly prepare the price proposals or allocate items between TI and Shell consistent with the Lease, GSA's repeated demands for revisions were, in fact, largely driven by its own funding shortfalls for the full TI costs and by a lack of attention from GSA personnel assigned to the Project.

22. During this process, in March 2023, the Lessor advised that it would agree to disagree on the allocation of TI and Shell costs in order to keep the Project moving and avoid further delay. Nevertheless, GSA refused to issue the NTP at that time and continued to withhold it for an additional seven months.

23. Given these Government-driven delays, GSA did not issue an NTP until October 25,

2023, which was 434 Working Days after the stay of performance was lifted, or approximately 249-Working Days behind schedule. (See Ex. 5).

24. When the 247-day delay caused by the Government's voluntary stay is included, the total Government-caused delay preceding issuance of the NTP amounts is 496 days (the "Period of Delay").

25. As a result of this delay and complete overhaul of the Lease, essentially altering what was being provided by Lessor under this contract from what was originally solicited by GSA and bid by Lessor, Lessor's cost in performing this Lease has been impacted on nearly every level.

26. The Lessor has continued to incur delays following issuance of the NTP as the ATF has still not formally accepted delivery of the Building; accordingly, these post-NTP costs were not included in the filing of the Certified Claim that underlies this appeal and have not yet been included in this Complaint.

        **C.**    **Costs Incurred by Lessor due to Government Delay during the Period of Delay**

27. Unabsorbed taxes attributable to this Government-leased space for the shell were assessed at $149,655.56 annually for Tax Year 2021, $135,784.93 annually for Tax Year 2022, and $133,878.42 for Tax Year 2023 by the local taxing authority, or an average of $382.94 per day. (See Ex. 6). For the Period of Delay, this cost to the Lessor amounts to $189,938.06.

28. Lessor paid operating costs (including water, electricity, sewage, and other utilities) and overhead costs of carrying the Leased Premises at a rate of $103.12 per day for this 43,538 RSF Leased Premises. (See Ex. 7). For the Period of Delay, this cost to the Lessor amounts to $51,147.52.

29. At the time of GSA's voluntary stay, the Lessor carried an insurance policy on the Leased Premises at an annual cost of $91,175.70 (Ex. 8) which increased to $230,568.47 in 2023 (See Ex. 9), resulting in a per diem rate of $249.79. For the Period of Delay, this cost to the Lessor amounts to $123,895.84.

30. Lessor incurred approximately $262,922.39 in legal fees to intervene in the GAO protest and in preparation of a Request for Equitable Adjustment submitted for its delay costs on November 17, 2023. ("REA"). (See Ex. 10).

31. The cumulative delay costs to the Lessor because of the Government delay and changes during the design and construction phase of the Lease total $627,904.00.

### D. Lessor's Changes in Tenant Improvement Costs to Buildout the Leased Premises

32. In addition to the delay imposed on the Lessor by the Government, GSA failed to reimburse Lessor for all the costs required for the buildout of the Leased Premises when it issued the NTP due to its erroneous application of the definition of Building shell, its refusal to properly allocate TI and shell in Lessor's TICs proposal, and as well as considerable changes to the Tenant Improvements.

33. The Lease provides for a Tenant Improvement Allowance ("TIA") in the amount of $1,667,365.00 and a BSAC allowance of $924,975.00, or a total of $2,592,340.00 (amortized at a rate of six percent (6%) over the firm term) to build out the Leased Premises. (See Ex. 1, Lease at Sections 1.03(A), 1.08(A) and 1.10).

34. Yet, GSA made such considerable unilateral changes to the Lease requirements that the cost to build out the space soared to $10,851,414.00—over $8.2 million more than the TI and BSAC allowances under the Lease. (See Exs. 11-12).

35. Despite the considerable changes to the Tenant Improvements, which were directed

7

solely by the Government and far in excess of the Lease requirements, GSA issued NTP with a significant shortfall in funding required to complete the buildout of the Leased Premises. (See Ex. 5).

36. GSA's NTP only authorized reimbursement to the Lessor in the total amount of $8,588,899.26 ($6,341,956.83 for TI and $2,246,942.43 for BSAC) (See Ex. 5), even though Lessor submitted updated TICS pricing in the amount of $8,364,336 (See Ex. 11) and BSAC pricing in the amount of $2,487,078.00 (See Ex. 12), which total $10,851,414.00. (See Ex. 13).

37. Furthermore, the amount authorized by GSA under the NTP only reimburses the Lessor for "$5,996,559.26" and "will be paid via a one-time lump sum payment by the Government upon completion, inspection, and acceptance of the Tenant and BSAC improvements by the Government and receipt of an invoice from the Lessor." (Ex. 5 at 1).

38. This required Lessor to fund a shortfall to build the TI and BSAC in the amount of $2,262,515.00. Accordingly, Lessor has been forced to obtain a second loan to fund the shortage of costs for the TI and BSAC buildout (hereinafter referred to as "Loan 2" and explained in more detail herein). Lessor's lender has mandated the issuance of a Lease Amendment referencing the cost of capital attributable to financing this additional TI/BSAC coverage, yet no such amendment has been issued by GSA.

39. The detailed breakdown shown on Ex. 13 attached hereto shows that there is a $1,638,471.62 cost discrepancy between Lessor's costs (as shown in the TICS submission) and what was approved by GSA in the NTP. Lessor has decreased this value to $1,558,892.25 to account for any projections, estimations, revisions, omissions, or

errors that may have been submitted with the TICS. When General Contractor ("GC"), Architectural and Engineering ("AE"), and Lessor fees are added to the disputed TICS amount of $1,558,892.25, Lessor's claim for this category of costs rises to $2,165,829.47. (See Ex. 13 at 5).

### E. Lessor's Increase in Costs Due to Post-TICS Tenant Improvement Changes

40. Even after the NTP was issued, which did not fully reimburse Lessor for all its TI costs, GSA continued to make substantial changes to the design and scope of the project, thereby continuing to impact Lessor's costs even after Lessor had submitted its final TICS pricing proposal.

41. These increased expenses were not included in Lessor's final TICS submission and were incurred solely because of the continued unilateral changes imposed by GSA. A summary of these changes is also shown on Ex. 13 at page 6 (corresponding subfiles omitted).

42. This post-TICs increase in TI costs total $2,070,773.59 when GC, AE, and Lessor's fees are added to same.

### F. Lessor's Changes in Shell Costs to Buildout the Leased Premises

43. Per Lessor's July 26, 2023 TICS Submission, the Lessor incurred the following shell costs, which total $2,979,312 (See Ex. 11). This amount is $1,869,812.00 above Lessor's original budget of $1,109,500.00. (See Ex. 14 at 2).

| Div 1 | General Requirements | $ | 210,039 |
|---|---|---|---|
| Div 2 | Site work & Demolition | $ | 976,733 |
| Div 3 | Concrete | $ | 10,400 |
| Div 4 | Foundations / Masonry | $ | - |
| Div 5 | Metals | $ | 27,082 |
| Div 6 | Woods & Plastics | $ | 8,530 |
| Div 7 | Thermal & Moisture | $ | 783,822 |
| Div 8 | Doors & Windows | $ | 33,821 |
| Div 9 | Finishes | $ | 159,126 |

| Div 10 | Specialties | $ 3,776 |
|---|---|---|
| Div 11 | Equipment | $ - |
| Div 12 | Furnishings | $ - |
| Div 13 | Special Construction | $ - |
| Div 15 | General Construction | $ - |
| Div 21 | Fire Suppression | $ 24,200 |
| Div 22 | Plumbing | $ - |
| Div 23 | HVAC | $ 334,002 |
| Div 26.1 | Electrical | $ - |
| Div 26.2 | Lighting | $ 68,505 |
| Div 27 | Communications, Security & Other Elec. Systems | $ 156,325 |
| Div 28.1 | Electrical safety & Security | $ - |
| Div 28.2 | Security | $ - |
| Div 32 | Exterior | $ 182,950 |
| Subtotal | Trade Costs | $ 2,979,312 |

44. Lessor incurred the $2,979,312 in unanticipated additional shell costs as a direct result of the Government's Stop Work Order and subsequent changes in scope, which exacerbated the already-existing delay to project completion. These delays impacted Lessor's shell costs on every level, due to inflation and other increased costs during the time of these volatile market conditions.

45. Lessor also incurred post-NTP increases in shell costs solely as a result of the Government's delay. These costs amount to $775,358.00 and are outlined in Ex. 13 attached hereto.

| Division | Description/File Name | Shell Trade Cost Increase |
|---|---|---|
| Div 26.2 | ABE - 25 Yr Electrical Inspection (SHELL ONLY) | $ 4,900.00 |
| Div 21 | COR 003 - Existing Fire Sprinkler Line Replacement (SHELL PORTION) | $ 8,930.96 |
| Div 23 | COR 006 - Addition of RTU Duct Detectors (SHELL PORTION) | $ 7,151.00 |
| Div 26.1 | COR 007.1 - Drawing E3.1 Power for nearest source (RFI 37) (SHELL PORTION) | $ 2,409.00 |
| Div 22 | COR 011.10 - Janitor Mop Sink (RFI 66) (SHELL ONLY) | $ |

10

|  |  |  |
|---|---|---|
|  |  | 3,019.87 |
| Div 5 | COR 011.12 - Steel Condenser Stands (RFI 47 & 77) (SHELL PORTION) | $ 4,831.67 |
| Div 7 | COR 011.14 - Roof Flashing and Patching (RFI 77) (SHELL PORTION) | $ 4,100.00 |
| Div 26.1 | COR 011.3 - RTU Outlets (RFI 65) (SHELL ONLY) | $ 9,732.00 |
| Div 26.1 | COR 011.4 - Power to Minisplit in Elevator Room (RFI 77) (SHELL ONLY) | $ 6,559.00 |
| Div 23 | COR 011.7 - Mini-Splits in Elevator Machine Room (RFI 77) (SHELL ONLY) | $ 12,480.97 |
| Div 27 | COR 015 - Elevator Work by Others (SHELL ONLY) | $ 26,800.00 |
| Div 3 | COR 019 - Window In-fill Framing (SHELL ONLY) | $ 23,911.00 |
| Div 10 | Diversified Aluminum - Shutter Repairs | $ 7,100.00 |
| Div 26.1 | Elcon - Site Lighting (SHELL ONLY) | $ 117,605.00 |
| Div 7 | Flack - Expansion Joint & Control Joint Repair (SHELL ONLY) | $ 10,140.00 |
| Div 7 | Flack - Stucco Soffit Repair (SHELL ONLY) | $ 13,375.00 |
| Div 7 | Flack - Stucco Temporary Openings | $ 24,750.00 |
| Div 7 | Flack - Wet Seal (SHELL ONLY) | $ 63,580.00 |
| Div 23 | Hill York - R&R RTUs #5 & #12 (SHELL ONLY) | $ 62,264.00 |
| Div 23 | Hill York - Remove 8ea RTUs (SHELL ONLY) | $ 35,225.00 |
| Div 23 | Hill York - Roof Repairs & Tarping (SHELL ONLY) | $ 2,954.00 |
| Div 23 | Hill York - RTU #3 Leak Check (SHELL ONLY) | $ 1,786.00 |
| Div 23 | Hill York - RTU #4 Repairs (SHELL ONLY) | $ 1,385.00 |
| Div 23 | Hill York - RTU #7 Repairs (SHELL ONLY) | $ 6,675.00 |
| Div 9 | Silveria - Exterior Painting (SHELL ONLY) | $ 28,500.00 |
| Div 2 | Solution Paving - Parking Lot Paving - Price Increase post-TICS (SHELL ONLY) | $ 277,800.00 |
| Div 1 | Turner - Staffing Update for 8.28.23 TICS Submission | $ 643.15 |
| Div 3 | Warren Von Werne - 25 Yr Structural Inspection (SHELL ONLY) | $ |

11

| | | |
|---|---|---|
| | | 5,000.00 |
| Div 7 | Warren Von Werne - Roof Curb Detail (SHELL ONLY) | $ 500.00 |
| Div 6 | Warren Von Werne - Window Infill Design (SHELL ONLY) | $ 1,250.00 |
| | **TOTAL Post-NTP Adds/Increases/Adjustments =** | **$ 775,357.62** |

### G. Lessor's Changes in Costs to Operate the Leased Premises

46. The chart below presents the overall cost summary of changes in operating and maintaining the Leased Premises due to the Government's delay and constructive changes to the Lease. The figures were derived by subtracting the costs outlined in Lessor's original GSA Form 1217 (Ex. 15) from an updated GSA Form 1217 prepared by Lessor (Ex. 16).

| SERVICES AND UTILITIES | | | | RLP BID | CLAIM |
|---|---|---|---|---|---|
| A. | | **Cleaning/Janitorial** | | | |
| | | 5. | Salaries | 76,708.00 | $139,708.80 |
| | | 6. | Supplies | 22,000.00 | $22,000.00 |
| | | 7. | Contract | 42,000.00 | $49,636.80 |
| B. | | **Heating** | | | |
| | | 8. | Salaries | $0.00 | $0.00 |
| | | 9. | Fuel | $18,000.00 | $18,000.00 |
| | | 10. | R&M | $3,000.00 | $0.00 |
| C. | | **Electrical** | | | |
| | | 11. | Light/Power | $45,000.00 | $45,000.00 |
| | | 12. | Bulbs, Etc | $6,500.00 | $9,764.70 |
| | | 13. | Spec Equip | $12,000.00 | $25,000.00 |
| | | 14. | R&M | $16,000.00 | $16,000.00 |
| D. | | **Plumbing** | | | |
| | | 15. | Water | $16,000.00 | $16,000.00 |
| | | 16. | Supplies | $12,000.00 | $12,000.00 |
| | | 17. | R&M | $12,000.00 | $12,000.00 |
| E. | | **Air Conditioning** | | | |
| | | 18. | Utilities | $80,000.00 | $80,000.00 |

|   |   | 19. | R&M | $23,000.00 | $23,000.00 |
|---|---|---|---|---|---|
| F. | **Elevators** | | | | |
|   |   | 20. | Salaries | $0.00 | $0.00 |
|   |   | 21. | R&M | $16,000.00 | $16,000.00 |
| G. | **Miscellaneous** | | | | |
|   |   | 22. | Eng / Mgr | $42,000.00 | $138,763.25 |
|   |   | 23. | Security | $0.00 | $0.00 |
|   |   | 24. | SS tax, etc | $0.00 | $0.00 |
|   |   | 25. | Landscaping | $16,500.00 | $76,400.00 |
|   |   | 26. | Other | $5,000.00 | $62,955.81 |
|   |   | **27.** | **TOTAL** | $463,708.00 | $762,229.36 |
|   |   | 28. | Real Estate Taxes | $225,000.00 | $133,878.42 |
|   |   | 29. | Insurance | $85,000.00 | $233,097.00 |
|   |   | 30. | R–M - Replacement | $65,000.00 | $65,000.00 |
|   |   | 31. | Lease Commission | $392,194.00 | --- |
|   |   | 32. | Management | $60,000.00 | $60,000.00 |
|   |   | **33.** | **TOTAL** | $827,194.00 | $491,975.42 |

47. The chart above shows an increase in operating expenses in the amount of $463,708.00 per annum to $762,229.36 per annum, or $298,521.36 annually/$2,985,213.60 over the life of the firm term of the Lease. These costs have escalated due to delays imposed by GSA during a period of labor escalation, inflation, and overall cost increases.

   **H. Lessor's Increase in Financing Costs**

48. The unilateral changes in scope to the Lease and ensuing protracted delay, caused solely by the Government's stay of performance and continued changes to design and construction schedule under the Lease, has extended the Lessor's period of performance.

49. Under the original Lease schedule provided under Section 4.01, the Government was to take occupancy of the Leased Premises no later than September 2022. However, as of the filing of this Complaint, the Lessor has had to finance the cost of the project by obtaining a loan to not just cover the shell construction of the Building, but also to cover the

shortfall in TI.

50. Lessor's Original 1364 submitted in 2021 was premised on a significantly lower interest rate of 10.5%. (See Ex. 17). Since then, the interest rates on Lessor's original loan ("Loan 1") have soared to over 15%. (Ex. 18). Moreover, Lessor has had to obtain a second Loan ("Loan 2") to cover the TI overage.

51. As a result, Lessor has incurred increased costs associated with carrying and completing the Leased Premises, as follows:

   a. "Loan 1" (No. 061030168) was obtained in the principal amount of $14,418,233.68, with a floating interest rate that has fluctuated between 10.50000% and 15.08157%. From September 2022—the original Lease occupancy date—through July 2024 (the date of the Certified Claim described below), the Lessor incurred an additional $3,067,351 in unanticipated interest costs caused solely by the Government's delays and changes. Beyond these excessive interest charges, the Lessor also paid $923,000.00 in late and extension fees and was required to infuse $690,000.00 in equity to continue financing the project. (See Exs. 17, 18, 19).

   b. "Loan 2" (061030231) was obtained in the principal amount of $7,300,000.00, with a floating interest rate that has fluctuated between 10.50000% and 15.32291%. For this second loan, Lessor has paid $303,978.00 in origination and exit fees and $250,000.00 worth of interest reserves in order to finance the project. (See Ex. 20).

   I. **Lessor's Increase in Insurance Costs as a Result of Tenant Improvement Overage**

52. Lessor's costs to insure the Leased Premises have increased exponentially as a result of

the dramatic cost of building out the Leased Premises. The increase in insurance is a function of time as well as the increased TI spend over and above the TIA. Lessor is required by its Lender to carry insurance on the TI that is to be amortized as a TIA, as well as the excess that is to be paid lump sum because Lender funds are utilized to pay for the buildout of this TI.

53. The TI will remain a required, fully insured component of the Leased Premises both because (1) the Lender requires the TIA to remain insured until the amortized amount is fully repaid, and (2) a casualty could eliminate the value of the TI improvements and leave no source to repay the Lender.

54. Lessor secured Loan 2 to borrow funds sufficient to permit TI buildout completion, and the improvements purchased with these borrowed funds must be insured to protect the Lender from loss in the event of a casualty.

55. As a result, Lessor will now be forced to incur revised insurance costs as a result of TI overages in the amount of $230,568.47 per year are shown in Section II, Paragraph G above and supported by Exhibit 9 attached hereto. These updated costs are included in the updated GSA Form 1217, line G (29). (Ex. 16).

### J. Lessor's Request for Equitable Adjustments and Certified Claim

56. On November 17, 2023, Lessor filed an REA asking that GSA tender payment for costs incurred by Lessor due to GSA delay and constructive changes to the Lease. (Ex. 21) (accompanying exhibits omitted).

57. After never receiving a response to its REA, on July 14, 2024, Lessor filed a Certified Claim amounting to $16,470,072.00 in increased costs due to Government delay and constructive changes to the Lease. (See Ex. 22) (accompanying exhibits omitted).

58. On December 12, 2024, GSA issued a Contracting Officer's Final Decision denying the majority of Lessor's Certified Claim, while granting Lessor an adjustment totaling $1,164,816.53 for security maintenance costs and a limited portion of post-NTP change orders. (See Ex. 23) (accompanying exhibits omitted).

## COUNT I

### BREACH OF CONTRACT AND CONSTRUCTIVE CHANGE

59. Plaintiff reasserts the allegations and statements set forth above as though set forth fully herein.

60. Pursuant to General Clause 31(a) - (b), equitable adjustments are required of GSA under the Lease when a Government change to Lessor's work results in increased costs.

61. The Lease also requires GSA to abide by the design and construction schedule found under Section 4.01 of the Lease.

62. GSA breached the Lease by failing to adhere to the design and construction schedule under the Lease and by refusing to fully reimburse Lessor for all the costs Lessor incurred solely as a result of GSA's delays and unilateral constructive changes made to the Lease.

63. Because GSA's delays and unilateral changes caused the Lessor to incur $16,470,072.00 in increased costs — costs that would not have been incurred but for the Government's voluntary stay, delayed issuance of the NTP, and constructive changes — GSA's partial denial of the Lessor's Claim is without basis.

## *REQUEST FOR RELIEF*

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests that this Court order the following relief:

a. That Lessor have judgment against the United States for at least $16,470,072.00 plus interest due under the Contract Disputes Act, for its breach of the Lease;

b. That Lessor have judgment against the United States for its costs of this civil action against the United States pursuant to applicable rules and law; and

c. That Lessor have judgment against the United States for such other and further relief as the Court may determine is just and proper under the proof presented.

Dated: November 26, 2025

Of Counsel:

Hadeel N. Masseoud
**CURRAN LEGAL SERVICES GROUP, INC.**
Box 303, 1000 Whitlock Avenue
Suite 320
Marietta, Georgia 30064
(404) 731-5159
866-894-7504 (fax)
hadeel@curranlegal.com

Respectfully submitted,

*/s/ Diana Parks*

Diana Parks (Curran)
**CURRAN LEGAL SERVICES GROUP, INC.**
Box 303, 1000 Whitlock Avenue
Suite 320
Marietta, Georgia 30064
(404) 556-7341
866-894-7504 (fax)
diana@curranlegal.com
*Attorney of Record for Plaintiff*